**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION**

| | |
|---|---|
| RAYMOND CROSS; MARILYN HUDSON ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> MARK FOX, individually and as a ) <br> member of the Three Affiliated Tribes ) <br> Tribal Business Council; RANDY ) <br> PHELAN, individually and as a member of ) <br> the Three Affiliated Tribes Tribal Business ) <br> Council, FRED FOX, individually and as a ) <br> member of the Three Affiliated Tribes ) <br> Tribal Business Council, MERVIN ) <br> PACKINEAU, individually and as a ) <br> member of the Three Affiliated Tribes ) <br> Tribal Business Council, JUDY BRUGH, ) <br> individually and as a member of the Three ) <br> Affiliated Tribes Tribal Business Council, ) <br> CORY SPOTTED BEAR, individually and ) <br> as a member of the Three Affiliated Tribes ) <br> Tribal Business Council, MONICA ) <br> MAYER, individually and as a member of ) <br> the Three Affiliated Tribes Tribal Business ) <br> Council ) <br> ) <br> Defendants. | **MEMORANDUM IN SUPPORT OF THE TRIBAL DEFENDANT'S MOTION TO DISMISS** <br><br> Case No. 1:20-CV-00177-DMT-CRH |

[¶1] Defendants Mark Fox, Randy Phelan, Fred Fox, Mervin Packineau, Judy Brugh, Cory Spotted Bear, and Monica Mayer (the "Tribal Defendants") file the following Memorandum in Support of their Motion to Dismiss. Three separate and distinct grounds require dismissal. First, this Court lacks subject matter jurisdiction as the Plaintiffs do not, and cannot, identify any substantive federal source of law which provides jurisdiction. Second, all of the Tribal Defendants

are cloaked in sovereign immunity. Finally, the tribal court proceedings are still ongoing, and Plaintiffs have failed to exhaust tribal remedies.

## INTRODUCTION

[¶2] This is a purely tribal dispute between tribal members and their tribal government regarding how tribal elections are conducted. Both plaintiffs are enrolled members of the Three Affiliated Tribes (the "Tribe"). Doc. 1, ¶ 18. The Tribe is organized under a Constitution that allows eligible enrolled members to vote in each election. However, it requires that an eligible tribal member living off the Fort Berthold Indian Reservation return to the Reservation to cast their vote in the tribal election, absentee voting is not allowed for non residents. This constitutional requirement has been in effect for decades. The Tribe further requires that any candidate for office reside within the Fort Berthold Indian Reservation. The aforementioned actions of the Tribe apply *only* to tribal elections and have no bearing on state or federal elections. The election provisions are wholly internal to the Tribe and have no bearing on non-tribal matters.

[¶3] Plaintiffs are attempting to litigate this matter in two separate courts. The Plaintiffs filed suit in the District Court of the Tribe. On August 5, 2019 the tribal district court ruled against the Plaintiffs. Doc. 1-3 at 1. On October 24, 2019, the Plaintiffs filed an appeal with the Three Affiliated Tribes Supreme Court. *Id.* On July 28th, 2020, the Tribe's Supreme Court ruled against the Plaintiffs on all but one issue. *Id.* at 10. The remaining issue was remanded to the Tribe's District Court. *Id.* The remanded tribal court matter is still pending and no final judgment has been entered. The Plaintiffs are now attempting to avoid a tribal court decision they disagree with by running to this federal court.

## STANDARD

2

[¶4] A motion to dismiss pursuant to Federal Rule of Civil Procedure (FRCP) 12(b)(1) challenges a court's subject matter jurisdiction. It is fundamental that a case must be dismissed for lack of jurisdiction unless the Plaintiff meets his/her burden to establish subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990).

[¶5] In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(1), the court is not limited to the facts pled in the complaint but can and should weigh evidence and determine facts in order to satisfy itself as to its power to hear the case. *Osborn*, 918 F.2d at 729 *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Consideration of such extrinsic evidence does not convert the motion to dismiss to summary judgment motion. *Osborn*, 918 F.2d at 729-30.

**ARGUMENT**

### I.     The Court Lacks Subject Matter Jurisdiction.

[¶6] The Plaintiffs failed to secure a decision to their liking before the Tribe's court system. The Plaintiffs ask this federal court, while the tribal proceedings continue, to intervene in a wholly tribal matter. Intervention by this Court cannot occur as there is no basis for jurisdiction.

a.  No Federal Question Jurisdiction Exists

[¶7] Plaintiffs assert that under various federal statutes, constitutional provisions, or federal treaties federal question jurisdiction exists. However, a review of each asserted base for federal question jurisdiction reveals that the Plaintiffs are wrong. The laws, constitutional provisions, and treaties cited by Plaintiffs either do not apply to the Tribe or lack jurisdiction enabling provisions.

[¶8] The federal question statute, 28 U.S.C. § 1331, requires the Plaintiffs to "invoke federal substantive law for there to be jurisdiction". *Gaming World Int'l v. White Earth Band of Chippewa Indians*, 317 F.3d 840, 847 (8th Cir. 2003). The burden of showing jurisdiction exits rests upon the Plaintiffs, and may not be shifted to another party. *Hart v. United States*, 630 F.3d 1085, 1089 n.3 (8th Cir. 2011).

[¶9] Tribal election disputes do not raise a federal question and such disputes are the exclusive domain of tribal forums. *Sac & Fox Tribe of the Miss. v. BIA,* 439 F.3d 832 (8th Cir. 2006); *Boe v. Ft. Belknap Indian Cmty. of Ft. Belknap Rsrv.*, 642 F.2d 276, 279 (9th Cir. 1981). The lack of a federal question stems from the matter being a purely intra-tribal matter regarding tribal governance. Tribes possess the "inherent and exclusive power over matters of internal tribal governance". 1 Cohen's Handbook of Federal Indian Law § 4.06 (2019)(hereafter "Cohen") (citing *Goodface v. Grassrope,* 708 F.2d 335, 339 (8th Cir.1983); *Nero v. Cherokee Nation,* 892 F.2d 1457, 1463 (10th Cir. 1989); *Timbisha Shoshone Tribe v. Kennedy*, 687 F. Supp.2d 1171, 1185 (E.D. Cal., 2009). Where a tribe conducts elections and provides administrative or judicial processes for contesting the election, it engages in a core governmental function related to internal tribal affairs. Cohen, § 4.06. As such federal law prohibits federal interference in tribal election disputes. *Id.* (citing *Shortbull v. Looking Elk*, 677 F.2d 645, 649 (8th Cir. 1982); *Motah v. United States*, 402 F.2d 1, 2 (10th Cir. 1968); *Milam v. U.S. Dep't of Interior,* 10 Indian L. Rep. 3013, 3015 (D.D.C. 1982)).

[¶10] The federal laws and constitutional amendments cited by Plaintiffs do not apply to Tribes or lack any jurisdiction empowering language. For each of the cited laws or constitutional amendments a wealth of federal decisions hold that federal courts lack jurisdiction to interfere with tribal elections. Plaintiffs assertion of jurisdiction ignores decades worth of jurisprudence.

[¶11] First, Plaintiffs turn to the Voting Rights Act's sections 2 and 3. The Voting Rights Act does not apply to tribal elections. *Cruz v. Ysleta Del Sur Tribal Council*, 842 F. Supp. 934, 935 (W.D. Tex. 1993). By its own terms, the act only applies to an election in a "state, territory, district, county, city, parish, township, school district, municipality, or other territorial subdivision". *Id.* (citing 42 U.S.C. § 1973aa-6). The 8th Circuit reached the same conclusion when it stated that the Voting Rights Act "applies by its terms to states and political subdivisions, and provides enforcement against state and political subdivision for violation of the Act". *Wounded Head v. Tribal Council of Oglala Sioux Tribe of Pine Ridge Rsrv.*, 507 F.2d 1079, 1084 (8th Cir. 1975). The 8th Circuit went on to determine that "Indian tribe[s] are not states or political subdivisions". *Id.* Accordingly, the 8th Circuit determined that the Voting Rights Act was inapplicable to disputes over tribal elections and the Act did not grant jurisdiction to federal courts for such disputes. *Id.*

[¶12] Next, Plaintiffs incorrectly assert that the United States Constitution provides federal court jurisdiction through the Fifth, Fourteenth, and Fifteenth Amendments. However, as "separate sovereigns pre-existing the Constitution, tribes have historically been regarded as unconstrained by those constitutional provisions framed specifically as limitation on federal or state authority". *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 (1978). For this reason, the Supreme Court has held that the "Fifth Amendment [does not operate upon] the powers of local self-government enjoyed by [tribes]". *Id.* (citing *Talton v. Mayes,* 163 U.S. 376 (1896)). The Fourteenth and Fifteenth Amendments operate as specific limits on federal or state authority and as such are not applicable to tribal governments. *Santa Clara Pueblo*, 436 U.S. at 56; *Johnson v. Frederick*, 467 F. Supp. 956, 958 (D.N.D. 1979)("The powers of the Turtle Mountain tribal government are constrained only by the provisions of the Indian Civil Rights Act, and not by the parallel provisions

5

of the [United States Constitution]"); *Groundhog v. Keeler*, 442 F.2d 674, 681 (10th Cir. 1971)("The provisions of the Constitution of the United States have no application to Indian nations or their governments, except as they are expressly made so by the Constitution (the Commerce Clause), or are made applicable by an Act of Congress").

[¶13] The Plaintiffs next move to the Indian Civil Rights Act, 25 U.S.C. §§ 1301-1303 ("ICRA") as grounds for jurisdiction. Through the ICRA "Congress exercised its plenary authority…by imposing certain restriction upon tribal government similar, but not identical, to those contained in the Bill of Rights and the Fourteenth Amendment". *Stanko v. Oglala Sioux Tribe,* 916 F.3d 694, 697 (8th Cir. 2019)(citing *Santa Clara Pueblo*, 436 U.S. at 56-57). However, except for haebus corpus claims, tribal courts hold *exclusive* jurisdiction for claims brought under the ICRA. *Santa Clara Pueblo*, 436 U.S. at 69-71. To allow federal court jurisdiction over ICRA claims would "substantially interfere with a tribe's ability to maintain itself as a culturally and politically distinct entity". *Id; Runs After v. United States*, 766 F.2d 347, 353 (8th Cir. 1985) ("[D]espite the substantive guarantees of certain constitutional rights contained in the ICRA, the only federal relief available under the [ICRA] is a writ of habeas corpus, and thus actions seeking the sorts of relief for tribal deprivations of rights must be resolved through tribal forums".) Since the *Santa Clara* decision federal courts have lock step dismissed challenges related to tribal elections based on ICRA. *Shortbull v. Looking Elk*, 677 F.2d 645, 650 (8th Cir. 1982); *Wheeler v. Swimmer*, 835 F.2d 259, 261 (10th Cir. 1987); *Boe*, 642 F.2d at 278; *Goodface v. Lower Brule Sioux Tribe 2020 Election Bd.*, No. 3:20-CV-03014-RAL, 2020 U.S. Dist. LEXIS 154133, at *3 (D.S.D. Aug. 25, 2020).[1]

---

[1] Plaintiffs may attempt to cite to decisions pre-dating *Santa Clara Pueblo* as some district courts would entertain and even provide decisions regarding tribal elections.*eg Williams v. Sisseton—*

6

[¶14] Plaintiffs assertion that the Indian Reorganization Act provides jurisdiction is wrong as well. This Court has previously determined that "[i]t is well-established that the Indian Reorganization Act does not give rise to a private cause of action or private remedy". *Baker v. Scarlett*, No. 4:06-cv-039, 2006 U.S. Dist. LEXIS 74492, at *11 (D.N.D. Oct. 4, 2006) (citing *Beams v. Norton*, 327 F. Supp. 2d 1323, 1330 (D. Kan. 2004);*Solomon v. Interior Reg'l Hous. Auth.*, 313 F.3d 1194 (9th Cir. 2002)); *see also Cal. Valley Miwok Tribe v. United States*, 380 U.S. App. D.C. 39, 43 (D.C. Cir. 2008). The Eighth Circuit has further explained that "the [Indian Reorganization Act] merely provides the authority and procedures whereby an Indian tribe may organize itself and adopt a tribal constitution and bylaws…the Act makes no mention of jurisdiction in any sense and such is not within its purview". *Twin Cities Chippewa Tribal Council v. Minn. Chippewa Tribe*, 370 F.2d 529, 531 (8th Cir. 1967).

[¶15] Plaintiffs make the truly odd argument that jurisdiction is imbued by the Fort Berthold Allotment Agreement of 1886. Plaintiffs do not cite any specific provision of the 1886 Agreement as grounds for jurisdiction. Nor are they able to do so. Under the 1886 Agreement, the United States obtained the Tribe's cession of a large portion of its land, and an agreement to allot tribal land to individual members. Nothing in the Agreement deals with how the Tribe organizes its government or how tribal elections are conducted. As such this "ground" for jurisdiction should be ignored.

[¶16] Plaintiffs continue upon their odd line of jurisdictional arguments by stating that the 1937 Corporate Charter of the Tribe provides this Court jurisdiction. To support this assertion the Plaintiffs cite to the Charter's provision that "[The Tribe] shall be a membership corporation…[i]ts

---

*Wahpeton Sioux Tribal Council*, 387 F. Supp. 1194 (D.S.D. 1975). Those decisions hold no precedential value and should be rejected.

7

members shall consist of all persons now or hereafter members of the [the Tribe]". Doc. 1¶ 11. Plaintiffs fundamentally misunderstand the purpose of the 1937 TAT Charter. The Charter establishes the *business* arm of the Tribe under Section 17 of the Indian Reorganization Act. This corporation is colluqially referred to as the Tribe's Section 17 Corporation. The Section 17 Corporation is not involved with nor does it have any power over the elections of the Tribe. Furthermore, membership in the Tribe's Section 17 Corporation has no inherent power to imbue this Court with jurisdiction.

    b.   Declaratory and Injunctive Jurisdiction

[¶17] The Plaintiffs assert that his court holds jurisdiction under the Declaratory Judgement Act, 28 U.S.C. § 2201, and under Fed. R. Civ. P. 65 for injunctive relief. Neither provision confers subject matter jurisdiction over the Plaintiffs' action.

[¶18] The Declaratory Judgment Act is a procedural statute and does not itself provide an independent basis for federal jurisdiction. *Starter Corp. v. Converse, Inc.*, 84 F.3d 592, 594 (8th Cir. 1996) ("It is well-settled that the Declaratory Judgment Act does not expand the jurisdiction of the federal courts"; therefore, the court would only have jurisdiction if a federal question "arising under" federal law, as required by 28 U.S.C. § 1331, was the "actual controversy" presented by the declaratory claim); see *Disciples Rd. v. Hiivala*, 2017 U.S. Dist. LEXIS 190262, *2-3 (citing cases). There must be an independent basis for federal jurisdiction before a federal court can issue a declaratory judgment. As described above, none of the asserted bases for jurisdiction succeed and as such this Court holds no declaratory or injunctive powers over the Tribal Defendants. 28 U.S.C. § 2201 is not jurisdictional nor was it created to confer jurisdiction where it does not exist otherwise. *Larsen v. Hoffman,* 444 F. Supp. 245 (D.D.C.). The statute does not "increase jurisdiction" nor does it create "substantive rights of litigants or create new causes of action".

*Reiter v. Ill. Nat. Cas. Co.,* 213 F.2d 946, 949 (7th Cir. 1954). Without another basis for jurisdiction the claims of the Plaintiffs must be dismissed. [2]

[¶19] Fed. R. Civ. P. 65 does not provide jurisdiction either. Instead it is a "procedural tool to expedite action and accommodate court and litigants and does not confer either subject matter or personal jurisdiction". *Citizens Concerned for Separation of Church & State v. Denver,* 628 F.2d 1289, 1299 (10th Cir. 1980) *cert denied* 452 U.S. 963 (1981); *Peterson v. Sears*, 238 F. Supp. 12, 13 (N.D. Iowa 1964). Because the Plaintiffs have no other source of jurisdiction dismissal is mandatory.

### II.     The Tribal Defendants Sovereign Immunity Divests This Court of Subject Matter Jurisdiction.

[¶20] Each of the Tribal Defendants is cloaked in sovereign immunity. Sovereign immunity is a jurisdictional defense that requires the immediate dismissal of this matter

[¶21] Sovereign immunity is a pure jurisdictional question and not a discretionary doctrine dependent on the equities of a matter. *Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1043 (8th Cir. 2000) (citing *Rupp v. Omaha Indian Tribe*, 45 F.3d 1241, 1244 (8th Cir. 1995)) Waivers of tribal sovereign immunity are strictly construed, and there is a strong presumption against them. *C & L Enters. v. Citizen Band Potawatomi Indian Tribe of Okla., 53*2 U.S. 411, 418 (2001). This immunity is so powerful that courts have held there can be no "waiver of tribal immunity based on policy concerns, or perceived inequities arising from the assertion of immunity, or the unique context of a case." *Pan Am. Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416,

---

[2] The same is true of the Plaintiffs Motion for Declaratory and Injunctive Relief. This Court lacks jurisdiction and as a result it lacks the power to provide declaratory or injunctive relief. Should the Complaint be dismissed it then follows that Motion for Declaratory and Injunctive Relief must be denied.

419 (9th Cir. 1989), *overruled on other grounds*, *C & L Enters., Inc., 53*2 U.S. 411, 418 (2001) (citations omitted).

[¶22] Indian tribes enjoy the same immunity from suit enjoyed by sovereign powers and are "subject to suit only where Congress has authorized the suit, or the tribe has waived its immunity." *Kiowa Tribe v. Mfg. Techs.*, 523 U.S. 751, 754 (1998); *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509 (1991). "To abrogate tribal immunity, Congress must unequivocally express that purpose," and "to relinquish its immunity, a tribe's waiver must be clear." *C & L Enters., 53*2 U.S. at 418 (citations and internal quotation marks omitted). A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed". *United States v. Testan*, 424 U.S. 392, 399 (1976)(quoting *United States v. King*, 395 U.S. 1, 4 (1969); *Sac & Fox Nation v. Hanson, 47* F.3d 1061 (10th Cir. 1995).

[¶23] A lawsuit against officials acting within their official capacity is nothing more than a claim against the sovereign. *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985); *Epps v. Duke Univ.*, 447 S.E.2d 444, 447 (N.C. Ct. App. 1994); *Mullis v. Sechrest*, 495 S.E.2d 721, 725 (N.C. 1998). Immunity from suit for a tribe also applies to tribal officials. *N. States Power Co. v. Prairie Island Mdewakanton Sioux Indian Cmty.*, 991 F.2d 458, 460-61 (8th Cir. 1993); *Linneen v. Gila River Indian Cmty.*, 276 F.3d 489, 492 (9th Cir.), *cert. denied*, 236 U.S. 939 (2002).

[¶24] The immunity of the Tribe extends to its officials so long as they were acting in their official capacity. *N. States Power Co.*, 991 F.2d at 460. [3] The burden of proof to show that an official was acting outside of their official capacity is upon the plaintiff and such a claim must go

---

[3] It is unclear why each of the Tribal Defendants are named in their individual capacity. The complaint does not allege any actions taken in individual capacities. As such dismissal in an individual capacity is necessary.

beyond mere allegations and instead provide concrete facts of wrongdoing. *Larson v. Dom. & Foreign Commerce Corp., 33*7 U.S. 682, 690-91 (1949).

[¶25] Plaintiffs make two broad allegations of wrongdoing against the Tribal Defendants. Neither are convincing as the alleged unlawful actions are simply the Tribal Defendants acting in their official capacity by enforcing the voting requirements of the Tribe's Constitution. The voting requirements in questions came about through amendments to the Tribe's Constitution in 1956 and 1986. Plaintiffs do not contend that the amendments were unlawful.

[¶26] The 1986 amendment requires members living off the Fort Berthold Indian Reservation to return to the Fort Berthold Indian Reservation to cast their vote. **Exbibit 1**, Art. IV Sec. (2)(b).[4]  Plaintiffs allege they have been deprived of their right to vote by the Tribal Defendants through the enforcement of this constitutional provision.

[¶27] The 1956 amendment requires that any candidate for a position on the Tribal Business Council must "[reside] within the segment he proposes to represent…for a period of at least six (6) months next preceding the date of the election".  Exhibit 1, at Art IV Sec (6). [5] The amendment further requires that a candidate for Tribal Chairman position must be a "bona fide resident of one of the segments".  Finally, the foregoing provisions allow for members of a segment to nominate a candidate should no qualified candidate run. *Id.*  Plaintiffs assert that the enforcement of the foregoing constitutional provisions by the Tribal Defendants deprives them of the ability to

---

[4] Curiously, though the Complaint depends heavily on the amended provisions of the Tribe's Constitution the Plaintiffs fail to include it. As such, it has been provided as part of this Motion to Dismiss.

[5] The Constitution of the Tribe divides the Fort Berthold Indian Reservation into six (6) segments. Under the Constitution a off-reservation member elects which segment they will vote in on the first election they return.  Exhibit 1, Art. IV Sec 2(b). This segment selection is binding for all future elections.

11

nominate a candidate of their choosing,[6] hold tribal office, and dilutes the vote of off reservation members.

[¶28] The enforcement of these acts does not abrogate the Tribal Defendants' immunity. Enforcement of constitutional amendments are official actions and cannot be ultra vires. *Smith v. Babbit*, 875 F. Supp. 1353, 1364 n. 7 (D. Minn. 1995)(determining that enforcement of membership requirements of a tribal constitution is an official act); *United States v. Ziegler*, 136 F. Supp. 2d 981, 991 (D.S.D. 2001)(the enforcement of tribal law is an official act). Plaintiffs contention that the enforcement of the tribal Constitution violates federal law is unavailing. As explained in pp. 3-6 above, those laws do not apply to tribal governments.

### III. After Exhaustion Of Tribal Remedies, The Court May Only Review Whether the Tribal Court Exceeded Its Jurisdiction.

[¶29] Even if the Plaintiffs could overcome the barriers of subject matter jurisdiction and the immunity of the Tribal Defendants they cannot overcome their failure to exhaust tribal remedies or the limitations that doctrine places on the exercise of federal court jurisdiction, even after exhaustion.  Plaintiffs readily admit that they have not exhausted tribal remedies. Dkt. 1 at ¶¶13-15.[7]  Plaintiffs contend that the tribal forum is "inadequate" and from this they assume that federal courts can hear their complaint even where, as here, the tribal court has jurisdiction . *Id.*

---

[6] Such a contention is dubious. As explained in fn. 5 each off-reservation member selects a segment to vote in. Art. IV, Sec (6) allows the nomination of a  candidate by a petition of "ten (10) qualified voters of [a segment]" when no qualified candidate exists.

[7] It is settled law that civil jurisdiction over tribal-related activities on tribal land presumptively lies in the tribal system, *Duncan Energy Co. v. Three Affiliated Tribes of Ft. Berthold Reservation*, 27 F.3d 1294, 1299 (8th Cir. 1994), and exhaustion is required before a party may challenge tribal jurisdiction in a federal court. *Krempel v. Prairie Island Indian Community*, 125 F.3d 621 (8th Cir. 1997); *Burlington Northern Railroad Company v. Crow Tribal Council*, 940 F.2d 1239, 1245 (9th Cir. 1991) ("[P]roper respect . . . requires" tribal remedy exhaustion.) (emphasis added).

But the Plaintiffs do not challenge the jurisdiction of the tribal courts over their cause, they simply disagree with the court's analysis of the merits of their claims, and this is fatal to their attempt to invoke this court.

[¶30] Plaintiffs argue that the tribal forum is inadequate because the tribal Supreme Court failed to apply federal law. Doc. 1 at ¶¶ 13-15. The Plaintiffs misstate the tribal forum adequacy exception to tribal exhaustion created by *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845 (1985). The adequacy exception to tribal exhaustion is highly specific in that a party may forego exhaustion when it has not had "an adequate opportunity to challenge the [tribal court's] jurisdiction". *Id.* at fn 21. But here the Plaintiffs never challenged the jurisdiction of the tribal court, they invoked it. Nor can they reasonably assert that the tribal court lacks jurisdiction over a wholly intra-tribal matter. Furthermore, Plaintiffs do not assert that they were denied an opportunity to contest the jurisdiction of the tribal courts.

[¶31] Moving beyond Plaintiffs misstatement of the adequate forum rule, an analysis of their assertion that this court can exercise jurisdiction because the Supreme court decision was wrong is just as faulty. Plaintiffs take issue with the tribal Supreme Court's assertion that it is "not bound by any cognizable federal or state constitution, laws, and/or decision regarding Plaintiffs' voting rights". Dkt 1. at ¶ 15. But disagreement with a tribal court decision on the merits of the Plaintiff's cause is not an exception to the tribal exhaustion rule. In fact, it is not even a basis for federal courts to exercise jurisdiction. In *National Farmers,* and later in *Iowa Mutual Insurance Co. v. LaPlante*, 480 U.S. 9 (1987), the Supreme Court held that the issue whether a tribal court <u>exceeds its jurisdiction</u> over non-Indians presents a federal question, but considerations of comity and the federal policy of promoting tribal self-government require a claimant challenging tribal jurisdiction to first exhaust tribal remedies. *National Farmers*, 471 U.S. at 852, 855-56; *Iowa*

13

*Mutual*, 480 U.S. at 15-17; *see Auto-Owners Ins. Co. v. Tribal Court of the Spirit Lake Indian Reservation*, 495 F.3d 1017, 1021-1022 (8th Cir. 2007) (explaining *National Farmers* and *Iowa Mutual*). The Supreme Court made it clear, however, that in cases where the tribal court properly exercises its jurisdiction, "proper deference to the tribal court system precludes relitigation" of the merits of the underlying cause of action. *Iowa Mutual*, 480 U.S. at 19; *Davis v. Mille Lacs Band of Chippewa Indians,* 193 F.3d 990, 991-992 (8th Cir. 1999) *cert. denied*, 529 U.S. 1099 (2000). Accordingly, unless the Plaintiff's are challenging the exercise of jurisdiction by a tribal court, federal court's may not examine the tribal court's decision on the merits of the issues presented.

[¶32] Here, the tribal Supreme Court succinctly points out what should be obvious, federal (or state) election laws and federal constitutional amendments do not apply to tribal elections. The fact that the Plaintiffs may disagree with this legal reality is not a basis to avoid the tribal courts' jurisdiction, and it certainly does not give the Plaintiffs the right to appeal a tribal court's decision on the merits under the guise of the tribal court exhaustion doctrine. Both *Iowa Mutual* and *Davis* foreclose such a result.

[¶33] As discussed above at pp. 3-9, tribal governments are not subject to the restraints created by the federal (or state) constitution or federal election laws. *See also* Cohen's, § 14.03 (2019). A fundamental aspect of Federal Indian Law is that tribes have the right to self-government and to control their internal relations. *Wheeler v. United States Dep't of Interior*, 811 F.2d 549, 551 (10th Cir. 1987) (citing *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142-45 (1980)); *McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164, 172-73 (1973)). Matters of internal tribal governance, like in person voting qualifications for tribal elections, is uniquely an aspect of a tribe's internal relations. "Tribal election disputes are intra-tribal matters. Federal courts lack jurisdiction over tribal election disputes that require interpretation of tribal law or a

tribal constitution to resolve." *Enrolled Members of the Blackfeet Tribe v. Crowe*, 2018 U.S. Dist. LEXIS 196281, *6 (D. Mt. 2018) citing *Goodface v. Grassrope*, 708 F.2d 335, 339 (8th Cir. 1983) and *U.S. Bancorp v. Ike*, 171 F. Supp.2d 1122, 1125 (D. Nev. 2001). Self-governance allows tribal governments to determine and enforce requirements like the "qualification to stand as a candidate…and eligibility to vote in tribal elections". Cohen, § 4.03(1)(A). The Plaintiffs' may not use the tribal exhaustion doctrine to circumvent these fundamental rules.

## CONCLUSION

[¶34] For the foregoing reasons, the Tribal Defendants respectfully request that the action be dismissed.

Respectfully submitted this  26 day of October 2019.

**FREDERICKS LAW FIRM LLC**

*Peter Breuer*
Peter J. Breuer
10541 Racine St
Commerce City, CO 80022
(720) 883-8580
pbreuer@jf3law.com


John Fredericks III
3730 29th Avenue
Mandan, ND 58554
(701) 425-3125
 jfredericks@ndnlaw.com

*Counsel for Tribal Defendants*